UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re Flight Safety Technologies, Inc. | : | |
| Securities Litigation | : | Civil Action No. |
| | : | 3:04 CV 1175 (CFD) |
| | : | |
| | : | |

## APPOINTMENT OF LEAD PLAINTIFFS AND LEAD COUNSEL AND ORDER

In August of 2004, three actions were filed in the District of Connecticut against Flight Safety Technologies, Inc. ("Flight Safety") and certain of its officers and directors who are alleged to have knowingly and recklessly omitted information from statements made in Securities and Exchange Commission ("SEC") filings and press releases.  Two groups of plaintiffs filed competing motions seeking to have the three actions consolidated, be named lead plaintiffs and have their law firms named lead counsel.  After extensive briefing, the opposing plaintiffs' groups submitted a joint motion to approve a proposed order consolidating related actions, appointing lead plaintiffs and appointing lead counsel.  **[Doc. # 10]**   By ruling dated January 23, 2005, this Court granted that motion in part, and consolidated the three actions.  Having made the decision on consolidation, the Court now considers the two unaddressed issues:  Appointment of lead plaintiffs and appointment of lead counsel.  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (requiring consolidation to be addressed prior to decisions on lead plaintiff and counsel).  Each issue will now be addressed in turn.

**I**     <u>**Facts**</u>

The complaint alleges that Flight Safety is a publicly traded company that is developing a sensor for use at airports to detect and track air disturbances, known as wake vortex turbulence, that can be hazardous for aircraft. Flight Safety was formed in 1997 by Samuel Kovnant and Frank Rees. In November of 2002, Flight Safety entered into a reverse merger with a public company named Reel Staffing, Inc., with Flight Safety as the surviving entity from the merger. As a result, Flight Safety obtained a public listing on the OTC Bulletin Board Market.

The complaint further alleges that during the class period, the defendants, Flight Safety and certain of its officers and directors, misled the public in a series of SEC filings, press releases and on their corporate website by omitting to state certain material information about the wake vortex sensor technology. Failure to disclose this information caused investors to incorrectly believe that the sensor technology was effective, that a market existed for it, that Flight Safety's technology had the support of certain agencies of the United States government, and that Flight Safety was "poised to finalize development and enter the United States and world marketplace." The complaint alleges that in truth the sensor had been severely criticized in an unbiased agency evaluation as being incapable of commercial implementation. Moreover, the evaluation made clear that Flight Safety was more than ten years from finalizing development of the sensor and still further from actually marketing it to customers.

The complaint also alleges that Flight Safety continued to omit from its SEC filings, website and press releases material information that provided negative evaluations of the sensor. The omissions of material facts caused Flight Safety's statements to be misleading, and Flight Safety has never fully disclosed the adverse information. The complaint further alleges that, in

purchasing Flight Safety securities during the Class Period, the plaintiffs and putative class relied on the defendants' misleading statements created by the omission of material information during the class period. As a result of the defendants' omission of material facts, the complaint alleges, the market price of the stock was artificially inflated during the class period, and, therefore, the putative class suffered millions of dollars in damages.

The plaintiffs brought this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the putative class members, and claim that common questions of law and fact include: whether the federal securities laws were violated by the defendants; whether the individual defendants are "control persons" within the meaning of federal securities laws; whether Flight Safety and the individual defendants omitted material facts; whether the market prices of Flight Safety securities during the class period were artificially inflated as a result of the conduct alleged in the complaint; and whether the plaintiffs and other members of the class have sustained damages, and, if so, what is the proper extent of those damages.

## II    Lead Plaintiffs

A) Law

The Private Securities Litigation Reform Act ("PSLRA") requires that, if an action has been consolidated, the court shall appoint a lead plaintiff "as soon as practicable" after the consolidation. 15 U.S.C. § 78u-4(a)(3)(B)(ii). Moreover, the PSLRA provides that "the court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter . . . referred to as the 'most adequate plaintiff')." Metro Services Inc. v. Wiggins, 158 F.3d 162, 164 (2d Cir. 1998) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(I)). Further, the PSLRA sets

forth a rebuttable presumption that the "most adequate plaintiff," i.e., the one who is to be selected as lead plaintiff, is the one who:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(I);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).[1]  This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of inadequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  In sum, "[t]wo objective factors inform the district court's appointment decision: the plaintiffs' respective financial stakes in the relief sought by the class, and their ability to satisfy the requirements of Rule 23."  Hevesi v. Citigroup, Inc., 366 F.3d 70, 81 (2d Cir. 2004)

---

[1] All plaintiffs seeking appointment as lead plaintiff also must file a certification that states the following:

> (I) ... the plaintiff has reviewed the complaint and authorized its filing;
> (ii) ... the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this chapter;
> (iii) ... the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

15 U.S.C. § 78u-4(a)(2)(A)(i)-(iii).  The certification must also include a list of the plaintiff's transactions in the stock, a list of all actions in which that plaintiff has served as lead plaintiff in the past three years, and a statement that the plaintiff will not accept payment for serving as a representative party in excess of plaintiff's pro rata share. 15 U.S.C. § 78u-4(a)(2)(A)(iv)-(vi).

In regard to the second factor, "the fact that a searching inquiry under Rule 23 is not required at this stage of the litigation does not mean that the Court must pay mere lip service to the requirement of the statute that a prospective lead plaintiff satisf[y] the requirements of Rule 23." In re Terayon Communications Systems, Inc. Securities Litigation, 2004 U.S. Dist. LEXIS 3131 (N.D. Cal. Feb. 23, 2004) ("In re Terayon") (quoting In re Critical Path, Inc. Sec. Litig., 156 F. Supp. 2d 1102 (N.D. Cal. 2001)).  Generally, Rule 23 has four prerequisites for class certification–numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); see also, In re PolyMedica Corp. Securities Litigation, 224 F.R.D. 27 (D. Mass. 2004) (examining the requirements of Rule 23).  "While the PSLRA requires that the lead plaintiff satisfy all of Rule 23's requirements, the third and fourth requirements of Rule 23--typicality and adequacy--are the key factors for a court's lead plaintiff determination." Armour v. Network Associates Inc., 171 F. Supp. 2d 1044, 1051 (N.D. Cal. 2001); accord Lax v. First Merch. Acceptance Corp., No. 97 C 2715, 1997 WL 461036, at *6 (N.D. Ill. Aug.6, 1997) (focusing the inquiry on typicality and adequacy).  "A Plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." In re American Medical Sys., 75 F.3d 1069, 1082 (6th Cir.1996).  A plaintiff can show that it adequately represents the interests of the class, pursuant to Rule 23(a)(4), if it appears that plaintiff's interests are not antagonistic to those of the class it seeks to represent and plaintiff's counsel is qualified to conduct the litigation.  In re Cardinal Health Inc. Securities Litigation, ___ F.R.D. ___, 2005 WL 238073 (S.D. Ohio, Jan. 26, 2005); Armour, 171 F. Supp. 2d at 1051.

B) Prospective Lead Plaintiffs

In this case, as mentioned previously, there were two competing plaintiffs' groups who sought appointment as lead plaintiff. The first group, the Rogers group, consisted of six individual plaintiffs represented by two law firms. The second group, the Ozkan group, consisted of three individuals and one institution represented by an additional two law firms. Each group filed memoranda in opposition to the opposing group's motion, and questioned the ability of the various members of the opposing group to serve as a lead plaintiff. Before the Court could resolve their competing motions, however, the parties joined forces and filed a joint motion seeking approval of a proposed order on appointment of lead plaintiff and lead counsel. Rather than taking a few plaintiffs from each group, the proposed order takes eight of the original ten plaintiffs from both sides and forms them into a larger group.[2] Specifically, the motions seek to have the following plaintiffs appointed as co-lead plaintiffs: M. Fardi Apaydin; Pathway Investments, LLC; William Hall; Sudi Ozkan; Mark Rogers; Normand Neal; J. Michael Lemons; and Andrew Milne. The Court recognizes that appointing a group of plaintiffs as co-lead plaintiffs is allowable under the PSLRA. See 15 U.S.C. § 78u-4(a)(3)(B)(i) (the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class" that satisfy the necessary requirements)(emphasis added). However, the Court finds that wholesale approval of the proposed group in inappropriate in this case.

To begin with, as the defendants correctly note, "[t]he purpose behind the PSLRA was to prevent 'lawyer-driven' litigation, and to ensure that 'parties with significant holdings in issuers,

---

[2] The two plaintiffs from the original groups who were not included in the subsequent larger group are Imran Patel and Moez Kassam. Both were members of the Rogers Group.

whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel.'" Welz v. Lee, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quoting In re Oxford Health Plans, Inc., Sec. Litig., 182 F.R.D. 42, 43-44 (S.D.N.Y.1998)).³  Thus, while in certain situations groups of lead plaintiffs will be appropriate, there are "outer limits to the number of plaintiffs allowed to proceed as lead plaintiff, in that there exists a point at which the [PSLRA's] express purpose of placing the control of securities class actions with a small and finite number of plaintiffs (as opposed to plaintiffs' counsel) becomes wholly undermined by the sheer size of the proposed plaintiff group." Id. at 133.  These outer limits are reached more quickly when the individual plaintiffs who comprise the proposed lead plaintiff group lack a preexisting relationship.  See In re Conseco, Inc. Sec. Litig., 120 F. Supp. 2d 729, 733 (S.D. Ind. 2000) ("While a lead plaintiff 'group' may be permissible, . . . aggregating parties 'that have nothing in common with one another beyond their investment is not an appropriate interpretation of the term group in the PSLRA'"); In re Advanced Tissue Sciences Sec. Litig., 184 F.R.D. 346, 352 (S.D.N.Y. 1988) ("courts have repeatedly rejected motions for the appointment of large amalgamations of unrelated persons as lead plaintiffs as being directly contrary to the PSLRA").  Clearly there is no preexisting relationship between the members of the Rogers Group and the members of the Ozkam Group.  However, it

---

³The plaintiffs contend that the defendants do not have standing to object to the proposed group of lead plaintiffs under PSLRA.  Whether defendants in a securities action have standing to oppose such a motion has not yet been addressed by the Second Circuit.  As other courts have noted, "the PSLRA requires Courts to take a more active role in supervising the process of selecting lead plaintiffs." Mitchell v. Complete Management Inc., 1999 WL 728678, *2 (S.D.N.Y.).  Therefore, this Court finds the information provided by the defendants useful in rendering its decision, regardless of whether they have standing to formally oppose plaintiffs' motion.  Funke v. Life Financial Corp., 2003 WL 194204, n.8 (S.D.N.Y., Jan. 28, 2003) (addressing concerns of the defendant).

also appears that there is no preexisting relationship among the individual members of the those groups.[4] Moreover, the joint motion submitted by the parties contains no indication of how the newly expanded group would function, such as whether certain lead plaintiffs would handle certain aspects of the litigation or whether decisions would be made by group consensus. Therefore, the Court finds that appointing eight unrelated and unfamiliar plaintiffs as co-lead plaintiffs, when no preexisting relationship is evident, would be counter to both the terms and the spirit of the PSLRA.

In addition, because this is a purported class action, this Court has a statutorily imposed duty to the purported class members to appoint a lead plaintiff or group of plaintiffs "that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  In the briefs submitted prior to the date on which the pending joint motion for appointment was filed, the Rogers Group and the Ozkam Group spent considerable time and effort criticizing the ability of the members of the other group to serve as lead plaintiffs in this action.  As noted previously, those groups have since abandoned their concerns, however, and combined with those previously deemed inadequate in order to pursue their remedy.  This gives new meaning to Lord Palmerston's quotation: "We have no eternal allies and we have no perpetual enemies. Our interests are eternal and perpetual, and these interests it is our duty to follow." John Bartlett, Bartlett's Familiar Quotations 417:20 (Justin Kaplan ed., 17th ed. 2002) (quote attributed to a speech by Henry John Temple, Viscount Palmerston, in the House of Commons, 1848).  Allowing the proposed lead plaintiffs to preclude this Court from addressing

---

[4] Indeed, the plaintiffs' memorandum in support of the joint motion for approval of the stipulated order notes that "numerous shareholders, including proposed lead plaintiffs, learned of this litigation through notices" issued by the several law firms involved in this action.

those legitimate concerns merely by joining forces would violate this Court's statutory duty to ensure adequate representation for the purported class members. Consequently, although no objection to the joint motion has been received, the Court will exercise its inherent authority and reduce the number of lead plaintiffs in this case. See § 78u-4(a)(3)(B)(I) (providing that a court "shall appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members")(emphasis added); see also Z-Seven Fund, Inc. v. Motorcar Parts & Accessories, 231 F.3d 1215, 1218-19 (9th Cir. 2000) (district court may make changes to lead plaintiff status consistent with court's continuing duty to ensure adequate representation of class); In re Terayon, 2004 U.S. Dist. LEXIS 3131 at * 19 ("What is clear is that . . . the court has a duty to monitor whether lead plaintiffs are capable of adequately protecting the interests of the class members"); In re Advanced Tissue Sciences Sec. Litig., 184 F.R.D. at 352 ("Where the courts have found that a proposed group of lead plaintiffs is too large to actively represent the interests of the purported class, the courts have exercised their supervisory authority to restrict the number of lead plaintiffs").

It would appear, therefore, that the Court has two options before it: (1) consider appointing either the Rogers Group or the Ozkam Group as lead plaintiffs; or (2) consider all eight of the proposed lead plaintiffs on an individual basis. Because of the concerns set forth previously in this ruling about a lack of preexisting relationships among the individual members of the two groups, as well the PSLRA's focus on reducing the number of lead plaintiffs in class actions, the Court will evaluate the proposed lead plaintiffs on an individual basis. The question

becomes, therefore, which plaintiffs, of the eight proposed, represent the most adequate plaintiffs when considered individually.

C) Appointment of Lead Plaintiffs

In this case, Sudi Ozkan is the most adequate plaintiff under the terms of the PSLRA's lead plaintiff presumption. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (setting forth the three criteria for most adequate plaintiff presumption to apply). There is no question that he satisfies the first two requirements: He has joined in the motion to be appointed lead counsel and he has the largest financial stake in the outcome of this litigation under any method of valuation. Indeed, his financial stake is almost ten times greater than the next highest proposed lead plaintiff.[5] Therefore, pursuant to the third requirement, the Court next must consider Ozkan's ability to satisfy the requirements of Rule 23. See § 78u-4(a)(3)(B)(iii)(I)(cc) (requiring court to consider Rule 23).

Again, "[w]hile the PSLRA requires that the lead plaintiff satisfy all of Rule 23's requirements, the third and fourth requirements of Rule 23--typicality and adequacy--are the key factors for a court's lead plaintiff determination." Armour, 171 F. Supp. 2d at 1051; see also In re PolyMedica Corp. Securities Litigation, 224 F.R.D. at 27 (noting that the four requirements of Rule 23 are numerosity, commonality, typicality and adequacy of representation). In regard to Ozkan, it appears that his claim is typical in that it arises out of the same event or practice or

---

[5]Ozkan's filing papers show that he purchased 219,065 shares of Flight Safety securities, and now claims losses of $810,402. In contrast, the proposed lead plaintiff with the next highest holding of shares is Pathway Investments, which purchased 40,000 shares of Flight Safety securities (and had warrants to purchase an additional 20,000 at an undisclosed price) and the proposed lead plaintiff with the next highest level of claimed losses is Mark Rogers, who claims a loss of $84,036.

course of conduct that gives rise to the claims of other class members, and his claims are based on the same legal theory as the other class members.  In regard to adequacy, however, there are concerns that Ozkan's interests may be antagonistic to those of the class he seeks to represent.  More specifically, there have been allegations that Ozkan was engaged in a tax avoidance scheme in Turkey, in which he was able to avoid paying more than $160 million in taxes.  The concerns, initially raised by the Rogers Group, and raised subsequently by the defendants, would be certainly troubling, if true.  However, given the stage of the proceeding, the lack of persuasive evidence on this point before the Court, and the presumption of adequacy set forth in the PSLRA for plaintiff with the largest financial stake, the Court finds that Ozkan meets the adequacy requirement of Rule 23.  But see In re Computers Securities Litigation, 111 F.R.D. 675, 682-83 (N.D. CAL. 1986) (questions of personal integrity of proposed class representative are one factor that the court may consider at class certification stage).[6]  Therefore, the Court finds that Ozkan is the most adequate lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)

      The Court recognizes that Ozkan could be an adequate sole lead plaintiff in this litigation, and that it need not appoint any other party as co-lead plaintiff.  Nevertheless, the Court believes that in this situation, appointment of co-lead plaintiffs "will enhance, rather than reduce, the efficiency of the litigation." In re Amer. Business Fin. Serv. Sec. Litig., 2004 WL 1221353 at *5 (E.D. Pa., June 3, 2004).  Although there is no apparent preexisting relationship between them outside of the fact that they both were members of the Ozkan Group, the Court exercises its

---

[6]A motion to remove a lead plaintiff may be entertained at a later date, however, if information concerning any of the lead plaintiffs reveals that he is no longer fit to serve in such a capacity.  See, e.g., In re Terayon, 2004 U.S. Dist. LEXIS 3131 (addressing a motion to remove lead plaintiffs).

discretion and, acting in the best interests of the purported class members, appoints Pathway Investments as a co-lead plaintiff.  See e.g., In re Cable & Wireless, PLC Sec. Litig., 217 F.R.D. 372, 376 (E.D. Va. 2003) ("The Court finds that appointing both an institutional and an individual investor to serve as co-lead plaintiffs will ensure that all class members will adequately be represented in the prosecution of this action"); In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (appointing individual investor and institutional investor as co-lead plaintiffs).  In so doing, the Court notes that Congress, in enacting the PSLRA, set forth a presumption that institutional investors serve as lead plaintiffs.  See In re Cardinal Health Inc. Sec. Litig., 226 F.R.D. 298, 306 (S.D. Ohio, Jan. 26, 2005); Smith v. Suprema Specialties, Inc., 206 F. Supp. 2d 627, 640 (D.N.J. 2002); In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001); Gluck v. CellStar Corp., 976 F. Supp. 542, 548 (N.D. Tex.1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors").  Pathway Investments joined in the motion to be appointed lead counsel, and while Ozkan has a much greater financial interest in this litigation, Pathway Investments had the second highest holding of Flight Safety securities (40,000 shares) and also claimed a loss that was equal to or greater than the loss claimed by most of the other proposed lead plaintiffs.  Any deficiency in this regard is more than offset, however, by the institutional knowledge and resources Pathway Investments would bring to the litigation.  See e.g., In re WorldCom Inc. Sec. Litig., 219 F.R.D. 267, 282 (S.D.N.Y. 2003) (institutional "investors are likely to use advisors, to invest conservatively in securities they consider undervalued by the market, and on occasion even to communicate directly with the company in which they are investing to verify or better evaluate its public disclosures"); Armour, 171 F. Supp.

2d at 1048 ("The underlying assumption of the PSLRA's lead plaintiff provisions is that the greater resources and litigation experience possessed by institutional investors makes them better equipped to serve as lead plaintiffs in securities class actions").  Pursuant to § 78u-4(a)(3)(B)(iii)(I)(cc), Pathway Investments still must satisfy the requirements of Rule 23.  See also In re PolyMedica Corp. Securities Litigation, 224 F.R.D. at 27 (noting that the four requirements of Rule 23 are numerosity, commonality, typicality and adequacy of representation); Armour, 171 F. Supp. 2d at 1051 ("While the PSLRA requires that the lead plaintiff satisfy all of Rule 23's requirements, the third and fourth requirements of Rule 23--typicality and adequacy--are the key factors for a court's lead plaintiff determination").

 Pathway Investments' claim is typical in that it arises out of the same event or practice or course of conduct that gives rise to the claims of other class members, and its claim is based on the same legal theory as the other class members.  Pathway Investments also appears to satisfy the adequacy requirement, as its interests are not antagonistic to those of the class it seeks to represent and plaintiff's counsel is qualified to conduct the litigation.  There are concerns, however, that Pathway Investment is subject to unique defenses, thereby rendering it an unfit lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb) (lead plaintiff should not be "subject to unique defenses that render such plaintiff incapable of adequately representing the class").  More specifically, the defendants claim that Pathway Investments purchased its shares after August 12, 2003, the date on which the defendants claim a Stock Lemon Report was issued that contained all of the information that the plaintiffs allege was omitted by the defendants in prior statements and filings. This argument is premature, as it invites the Court to consider issues that are not properly before it, including whether the defendants had a duty to disclose, whether they did disclose and

13

whether the plaintiffs bought their securities after such disclosure. Consequently, the Court finds that Pathway Investments is also an adequate lead plaintiff under the PSLRA, and appoints it to serve as co-lead plaintiff with Ozkan.[7]

**III     Lead Counsel**

Lead plaintiffs have the discretion to retain counsel of their choice to represent the class, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class"); see also In re Cardinal Health Inc. Sec. Litig., 226 F.R.D. at 306 ("Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class"); Gluck v. CellStar Corp., 976 F. Supp. 542, 550 (N.D. Tex.1997) (holding that a Court should not disturb a proposed lead plaintiff's choice of lead counsel unless "necessary to protect the interests of the plaintiff class") (citing Conference Report on Securities Litigation Reform, H.R.Rep. No. 369, 104th Congress, 1st Sess. 31, reprinted in 1995 U.S.C.C.A.N. 679, 734); In re Cable & Wireless, PLC Sec. Litig., 217 F.R.D. at 376 (same). In the instant case, Ozkan and Pathway Investments were both part of the original Ozkan group, and the counsel representing them was The Rosen Law Firm, P.A., as lead counsel, and Stratton Faxon as local counsel. The Court is satisfied that the firms selected by the co-lead plaintiffs are competent and experienced in

---

[7]The defendants also have challenged the notice given by the proposed lead plaintiffs in this case to purported class members. See 15 U.S.C. § 78u-4(a)(3)(A)(i) (setting forth the requirements for proper notice under the PSLRA). The Court finds, however, that sufficient notice was provided.

securities litigation to warrant their appointment as lead counsel and local counsel in this case.[8] The Court notes that with the appointment of co-lead plaintiffs and both lead and local counsel, "there shall be no duplication of attorney's services and that the use of [two law firms] will not in any way increase attorney's fees and expenses." In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. at 50; see also Bell v. Ascendant Solutions, Inc., 2002 WL 638571, *7 (N.D. Tex. Apr.17, 2002) (noting that "[t]he Court will not permit both [local counsel] and the lead counsel to be compensated for any duplication of services among the law firms").

In sum, the Court **GRANTS** the motion to approve a proposed order appointing lead plaintiffs and appointing lead counsel **[Doc. # 10]** modified as follows:

<u>**ORDER APPOINTING LEAD PLAINTIFFS AND APPROVING SELECTION OF LEAD COUNSEL**</u>

WHEREAS, 15 U.S.C. § 78u-4(a)(3)(B)(i) requires the Court to appoint as "lead plaintiff" those individuals who are the "most capable of adequately representing the interests of class members"; and

WHEREAS, plaintiffs Sudi Ozkan and Pathway Investments LLC moved this Court for an order appointing them Lead Plaintiffs in the above-captioned cases, and supplied this court with documentation supporting said motion; and

Having considered the proposed lead plaintiffs' motion to approve a proposed order

---

[8]As one District Court noted: "This court has demonstrated a strong preference for local liaison counsel when securities fraud class actions are filed by out-of-state lawyers. It facilitates communication and ensures that out-of-state lawyers are familiarized with local rules and practices. It also ensures that if a court appearance is necessary on short notice or for a minor matter, a legal representative of the litigant can be available quickly, and without the expense of out-of-state travel." de la Fuente v. DCI Telecomms., Inc., 269 F. Supp. 2d 229, 232-33 (S.D.N.Y. 2003).

appointing lead plaintiffs and appointing lead counsel, as well as the memoranda of law and the declarations filed in support thereof, and good cause appearing therefor:

IT IS HEREBY ORDERED AND DECREED AS FOLLOWS:

I.   <u>APPOINTMENT OF LEAD PLAINTIFFS AND LEAD COUNSEL</u>

The following class members are hereby appointed Lead Plaintiffs for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(i): Sudi Ozkan and Pathway Investments, LLC.

The Rosen Law Firm, P.A. is hereby appointed Lead Counsel for the Class, and the law firm of Stratton Faxon is hereby appointed local counsel for the Class, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

Lead Counsel shall be responsible for coordinating and organizing the plaintiffs in the conduct of this litigation and shall assume and exercise the following powers and responsibilities:

(1)   To coordinate the briefing and argument of motions;

(2)   To coordinate the conduct of written discovery proceedings;

(3)   To coordinate the examination of witnesses in depositions;

(4)   To coordinate the selection of counsel to act as spokesperson at pretrial conferences;

(5)   To call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time;

(6)   To conduct all settlement negotiations with counsel for the defendants;

(7)   To coordinate and direct the preparation for trial, and the trial of this matter and to delegate work responsibilities to selected counsel as may be required;

(8)   To receive orders, notices, correspondence and telephone calls from the Court on

      behalf of all plaintiffs, and to transmit copies of such orders, notices, correspondence and memoranda of such telephone calls to plaintiffs' counsel; and

(9)     To supervise any other matters concerning the prosecution or resolution of any subsequently consolidated or transferred actions which arise from the same common course of operative facts and events as alleged by the Plaintiffs' Complaint in the Action or any subsequently Amended Complaint filed by the Lead Plaintiffs.

With respect to scheduling and/or procedural matters, Defendants' counsel may rely upon all agreements with Lead Counsel.

No pleadings or other papers shall be filed or discovery conducted by any plaintiff excepted as directed or undertaken by Lead Counsel.

II.    <u>SERVICE OF PLEADINGS AND OTHER PARTIES</u>

Service by the Defendants or Plaintiffs of any papers shall be deemed complete for all purposes when a copy is served on Lead Counsel.

SO ORDERED this  19th  day of October 2005, at Hartford, Connecticut.

                     /s/ CFD
                **CHRISTOPHER F. DRONEY**
                **UNITED STATES DISTRICT JUDGE**